IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| WILLIAM PATRICK FLOYD, | Case No. 2:14-cv-01775-SB |
| Plaintiff, | **FINDINGS AND RECOMMENDATION** |
| v. | |
| OFFICER WATKINS, in individual and official capacities, | |
| Defendant. | |

**BECKERMAN, Magistrate Judge.**

William Patrick Floyd, an inmate at Two Rivers Correctional Institute, filed this action *pro se* against Correctional Officer Nicholas Watkins ("Officer Watkins"), in his individual and official capacity, alleging claims under federal and state law arising from an ankle injury Floyd sustained during a basketball game. Specifically, Floyd alleges one claim against Officer Watkins pursuant to 42 U.S.C. § 1983 for violations of Floyd's Eighth and Fourteenth Amendment rights by intentionally

Page 1 - FINDINGS AND RECOMMENDATION

delaying medical treatment and refusing to provide medical care. Additionally, Floyd alleges a state law claim for negligence due to Officer Watkins' failure to follow a standard of care that would protect Floyd from unreasonable risk. Floyd seeks economic and non-economic damages, including an award of punitive damages, and reasonable attorney fees and costs.

Officer Watkins filed an unopposed Motion for Summary Judgment seeking an entry of judgment against Floyd's § 1983 claim, on the ground Floyd failed to exhaust all of his administrative remedies prior to filing this action in federal court.[1] In addition, Officer Watkins asks this Court to decline to exercise supplemental jurisdiction over Floyd's remaining state law claim. For the reasons set forth below, Office Watkins' Motion for Summary Judgment should be granted in its entirety, and Floyd's Complaint should be dismissed.

## I. FACTS AND PROCEDURAL HISTORY

Floyd entered the Oregon Department of Corrections' ("ODOC") custody on April 14, 2009, and was housed at the Two Rivers Correctional Institution ("TRCI") from October 15, 2013, until September 11, 2014. (Arnell Eynon Decl. ¶ 3, Feb. 26, 2015.) Floyd transferred to Columbia River Correctional Institution on September 11, 2014. (Eynon Decl. ¶ 3.) Floyd filed his Complaint in this case on November 7, 2014. (ECF No. 4.)

---

[1] Officer Watkins filed the Motion for Summary Judgment on March 2, 2015. (ECF No. 24.) On March 4, 2015, the Clerk of the Court issued a Summary Judgment Advice Notice and Scheduling Order directing Floyd to file his Opposition by April 4, 2015. (ECF No. 26.) Floyd did not file a response to the pending summary judgment motion by that date. On April 16, 2015, the Court extended Floyd's deadline to respond to April 30, 2015. (ECF No. 28.) To date, Floyd has not responded to Officer Watkins' motion. Therefore, the Court considers the Motion for Summary Judgment unopposed.

Page 2 - FINDINGS AND RECOMMENDATION

Floyd alleges that on May 25, 2014, he sustained a serious ankle injury during a basketball game, and requested medical assistance from Officer Watkins. (Compl. ¶¶ 4-5.) Floyd further alleges that Officer Watkins called the medical unit, and informed Floyd he could walk to the medical unit without assistance. (Compl. ¶¶ 6 and 9.) Floyd contends he told Officer Watkins he was in incredible pain from the injury and walking unassisted would cause more damage to his ankle. (Compl. ¶¶ 7 and 13.) Officer Watkins allegedly told Floyd he must walk to the medical unit on his own or remain where the injury occurred. (Compl. ¶ 20.) Floyd alleges he began walking the 250 yards to the medical unit, and did not receive assistance until a wheelchair arrived approximately 25 feet from the unit. (Compl. ¶¶ 27-31.)

Floyd filed his first grievance on July 8, 2014, complaining that when another inmate twisted his ankle playing basketball on June 13, 2014, officers borrowed Floyd's wheelchair to transport the inmate to the medical unit. (Eynon Decl. ¶ 12; Ex. 4 at 2.) At the time, Floyd was recovering from surgery on his Achilles tendon. Floyd complained he did not receive the same assistance when he was injured. (Eynon Decl. ¶ 12; Ex. 4 at 2.)

On July 26, 2014, Lieutenant Albert Hazen responded to Floyd's grievance by meeting with Floyd. Lieutenant Hazen reported that at the end of their meeting, Floyd indicated he was satisfied with the outcome of the conversation, and Lieutenant Hazen considered the matter closed. (Eynon Decl. ¶ 13; Ex. 4 at 2.) Floyd did not appeal this grievance. (Eynon Decl. ¶ 14.)

On August 12, 2014, Floyd filed a second grievance. He alleged he filed an initial grievance on July 7, 2014, addressing Officer Watkins' indifference to his medical needs on May 25, 2014, but he never received a response. (Eynon Decl. ¶ 15; Ex. 5 at 2.) Floyd further asserted that when he inquired about the status of his initial grievance, he was told each time that no record of his

Page 3 - FINDINGS AND RECOMMENDATION

grievance existed. (Eynon Decl. ¶ 15; Ex. 5 at 2.) On August 15, 2014, ODOC denied Floyd's second grievance as untimely. (Eynon Decl. ¶ 16; Ex. 5 at 1.)

On September 2, 2014, Floyd filed a third grievance. Floyd complained he received a response to his second "kyte" (a shorthand reference for an Inmate Communication Form) on July 14, 2014, indicating the grievance coordinator never received the previously-filed grievance regarding Officer Watkins' indifference to his medical needs. (Eynon Decl. ¶ 18; Ex. 6 at 2.) In contrast with his second grievance in which Floyd stated that on July 7, 2014, he filed a grievance about Officer Watkins' actions, Floyd alleged in the third grievance that he filed the Officer Watkins grievance "shortly after [his] ruptured Achilles tendon surgery." (Eynon Decl. Ex. 6 at 2.) That surgery occurred on June 4, 2014. (Eynon Decl. ¶ 18.) Regardless, Floyd expressly stated that his third grievance was a "re-submit" of his second grievance. On September 4, 2014, ODOC denied Floyd's third grievance as untimely. (Eynon Decl. ¶ 18; Ex. 6 at 1.)

A thorough search of ODOC's grievance records reveals that Floyd filed three grievances relating to the issues raised in this action. (Eynon Decl. ¶¶ 12, 15, 18 and 19.) Floyd did not appeal the denial of the grievances. (Eynon Decl. ¶¶ 14, 17 and 18.)

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED R. CIV. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All material facts are resolved in a light most favorable to the nonmoving party. *Id.* at 331. The Court must accept all

evidence and make all inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### III. DISCUSSION

#### A. Federal Claim - Section 1983

Officer Watkins argues Floyd's § 1983 claim should be dismissed for failure to exhaust his available administrative remedies prior to filing his civil rights complaint in federal court. This Court agrees.

##### (1) The PLRA's Exhaustion Requirements

The Prison Litigation Reform Act ("PLRA"), amended 42 U.S.C. § 1997e to provide: "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Under the PLRA, incarcerated plaintiffs are required to exhaust all available administrative remedies within the institutions in which they are housed before bringing any federal action in connection with prison conditions, including actions brought under 42 U.S.C. § 1983. *Goninan v. C/O Smith, Corp.*, No. 6:12-cv-02310-PK, 2015 WL 853044, at *5 (D. Or. Feb. 25, 2015). For purposes of the PLRA, actions brought with respect to "prison conditions" include all actions brought to challenge isolated episodes of unconstitutional or otherwise unlawful misconduct of any kind, as well as prisoner petitions challenging conditions of confinement. *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy, and effective." *Id.* at 524; *Booth v. Churner*, 532 U.S. 731, 739-40 (2001). Even when the prisoner seeks relief not available in grievance proceedings,

Page 5 - FINDINGS AND RECOMMENDATION

notably money damages, exhaustion is a prerequisite to suit. *Porter*, 534 U.S. at 524; *see also Booth*, 532 U.S. at 739 (holding that a prisoner "seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money"). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id.* at 84.

Once a defendant shows there was an available administrative remedy and the prisoner did not exhaust that available remedy, the prisoner has the burden of production to come forward with evidence showing there is something in his case that made the existing and generally available administrative remedies effectively unavailable to him. *Albino v. Lee BACA, Los Angeles County Sheriff*, 747 F.3d 1162, 1172 (9th Cir. 2013) (en banc).

For inmates such as Floyd who are housed at TRCI, grievances are processed in accordance with the ODOC Administrative Rules governing *Grievance Review System (Inmate)*, set forth in Chapter 291, Division 109 of the Oregon Administrative Rules. (Eynon Decl. ¶ 6, Ex. 2.) ODOC has a three-level grievance and appeal remedy process in place to address inmate complaints. (Eynon Decl. ¶¶ 6-10.) Inmates are informed of the processes for filing a grievance during admission and orientation to the facility where they are housed. (Eynon Decl. ¶ 7.) The grievance process is also explained in the inmate handbook, which is provided to each inmate. (Eynon Decl. ¶ 7.) Additionally, inmates may ask any housing unit officer for a grievance form, which is accompanied by an instruction sheet. (Eynon Decl. ¶ 7.)

Page 6 - FINDINGS AND RECOMMENDATION

Inmates can file grievances regarding several issues, including "unprofessional behavior or action which may be directed toward an inmate by an employee or volunteer." OR. ADMIN. R. § 291-109-0140. Inmates are encouraged to communicate grievances informally with first-line staff as their primary means of resolving disputes, prior to filing a formal grievance. OR. ADMIN. R. 291-109-0140(1)(a). If the initial communication does not resolve the grievance, the inmate may proceed to level one by completing a grievance form. *Id.* If the matter is not an emergency, grievance forms must be filed with the grievance coordinator within thirty days of the aggrieving incident, and contain "a complete description of the incident, action, or application of the rule being grieved, including date and approximate time." *Id.* at 291-109-0140(l)(b) and 291-109-0150(2). An inmate cannot grieve misconduct reports or issues for which the inmate has filed suit in state or federal court. *Id.* at 291–109–0140(3)(e), (i).

At level two, an inmate may appeal the grievance coordinator's decision regarding the inmate's level-one grievance form, to the functional unit manager. *Id.* at 291–109–0170(1). The inmate must file a grievance appeal form with the grievance coordinator within fourteen days of the date ODOC sent the level-one grievance response to the inmate. *Id.* at 291–109–0170(1)(b). At level three, the inmate may appeal the decision made by the functional unit manager by filing an additional grievance appeal form with the grievance coordinator within fourteen days of the date ODOC sent the level-two grievance response to the inmate. *Id.* at 291–109–0170(2). This satisfies the administrative remedies exhaustion requirement under § 1997e(a).

Inmates are required to exhaust all available grievance remedies before filing a § 1983 action, including appealing the grievance decision to the highest level within the grievance system, or suffer

dismissal of their complaint. *Bennett v. King*, 293 F.3d 1096, 1098 (9th Cir. 2002); *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002).

### (2) Floyd Failed to Exhaust the Administrative Remedies

#### a. Floyd's First Grievance

On July 8, 2014, Floyd filed his first grievance, stating that on or around June 13, 2014, ODOC authorized medical staff, extra officers, and a stretcher to help an inmate who twisted his ankle while playing basketball. (Eynon Decl. Ex. 4 at 2.) Floyd complained prison staff used his wheelchair to assist the injured inmate, which prevented Floyd from going to the day room for over two hours. (Eynon Decl. Ex. 4.) Floyd also stated that he did not receive the same attention and assistance when he twisted his ankle. (Eynon Decl. Ex. 4 at 2.)

Lieutenant Hazen responded to Floyd's grievance by conducting an interview with Floyd on July 26, 2014. (Eynon Decl. Ex. 4.) Floyd told Lieutenant Hazen he felt humiliated and singled out because staff members used his wheelchair to transport an injured inmate, and he did not receive the same type of medical treatment when he was hurt. Lieutenant Hazen explained to Floyd that it was Health Services (*i.e.*, not a correctional officer) that determined the amount and method of treatment he received. Lieutenant Hazen also explained that if staff members were ordered to obtain a wheelchair to move an injured inmate, they would select the one nearest to the incident, which in this instance was Floyd's wheelchair. If time and circumstances permitted, staff would have explained why they chose his wheelchair over another. In response to Lieutenant Hazen's question about whether he was satisfied with the outcome of the conversation, Floyd stated he was. Lieutenant Hazen considered the matter closed, and Floyd did not file any appeals regarding his grievance.

Page 8 - FINDINGS AND RECOMMENDATION

Floyd now alleges that Officer Watkins violated his Eighth and Fourteenth Amendment rights to prompt and adequate medical care on May 25, 2014. A careful reading of Floyd's first grievance reveals he primarily challenged the use of his wheelchair to assist another inmate, on June 13, 2014. Although Floyd in his first grievance noted that he did not receive the same treatment when he was injured, his grievance does not specifically mention Officer Watkins' failure to provide prompt and adequate medical care on May 25, 2014. Nevertheless, when Lieutenant Hazen processed Floyd's first grievance he addressed the medical care Floyd received. (Eynon Decl. Ex. 4 at 1 ("As I explained to you during our conversation that medical will determine the amount and method of treatment that [y]ou will receive.").) Because this Court must construe Floyd's first grievance liberally, it assumes Floyd's allegation that "I didn't get the same assistance" was a challenge to the adequacy of Officer Watkins' May 25, 2014 response. *See Bretz v. Kelman,* 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985) (en banc) ("[W]e have an obligation where the petitioner is *pro se*, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.").

Although Lieutenant Hazen explained the protocol for using Floyd's wheelchair, Floyd did not receive any relief for his claim (as construed) that Officer Watkins was indifferent to his medical needs. *See, e.g., Green v. Cahal,* No. 3:03-cv-805-MO, 2004 WL 1078988 at *2-3 (D. Or. May 11, 2004) (prisoner's complaint of medical care delay that resulted in a decision that treatment was forthcoming should nonetheless have been appealed). Prior to filing his claim for medical indifference in this Court, Floyd was required to exhaust his administrative remedies with ODOC by appealing Lieutenant Hazen's response. *See* OR. ADMIN. R. 291-109-0170(1) ("The grievance coordinator must receive an appeal within 14 calendar days from the date that the grievance response

Page 9 - FINDINGS AND RECOMMENDATION

was sent to the inmate from the grievance coordinator."). Floyd did not appeal the grievance response and, therefore, he failed to exhaust his administrative remedies. *See Marella v. Terhune*, 568 F.3d 1024, 1028 (9th Cir. 2009) ("If a prisoner had full opportunity and ability to file a grievance timely, but failed to do so, he has not properly exhausted his administrative remedies." (citing *Woodford*, 548 U.S. at 88.)).

### b. The Alleged Missing Grievances

In his second and third grievances, Floyd alleged that he filed an earlier grievance, challenging Officer Watkins' indifference to his medical needs on May 25, 2014. In the second and third grievances, Floyd argued the ODOC's failure to process that "missing" grievance hindered his opportunity to seek a remedy for the May 25 incident. (Eynon Decl. Ex. 5 at 2; Ex. 6 at 2.)

Floyd's allegations of a missing grievance are unsupported by any evidence in the record at summary judgment. Rather, Officer Watkins submitted evidence that there is no record of an earlier grievance challenging Officer Watkins' purported misconduct. (Eynon Decl. ¶ 19 ("I have made a thorough search of my records and did not find any grievances which Inmate Floyd specifically directed to Defendant Watkins that had to do with the claims in his complaint.").) While Floyd's third grievance omitted a specific date for the missing grievance, he expressly stated it was a "re-submit" of his second grievance. In any event, even if Floyd did file a grievance on July 7, and there is nothing in the record to support that he did, it would have been untimely because July 7, 2014, is more than 30 days after May 25, 2014, the date of the incident giving rise to the grievance. (Eynon Decl. ¶ 16.)

In sum, Floyd failed to exhaust his grievance relating to the May 25, 2014, incident. Floyd does not offer any evidence to explain his failure to exhaust his claims, or that his attempts to do so

Page 10 - FINDINGS AND RECOMMENDATION

were impeded. *See Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010) (failure to exhaust was excused when prisoner took reasonable and appropriate steps to exhaust his claim and was precluded from exhausting by the warden's mistake). The uncontroverted evidence before the Court is that Floyd failed to exhaust his claim for indifference to his medical needs. Accordingly, the district judge should grant summary judgment, with prejudice, on Floyd's Eight and Fourteenth Amendment claims for delaying and refusing medical treatment.[2]

## B.  State Law Claim - Negligence

The PLRA's exhaustion requirement applies only to claims filed by prisoners "with respect to prison conditions under section 1983 of this title, or any other Federal law." 42 U.S.C. § 1997e(a). While Floyd's §1983 claim clearly falls within the ambit of § 1997e(a), and is subject to the exhaustion pleading requirements, his state law claim of negligence is not subject to the exhaustion requirement. Office Watkins acknowledges that dismissing Floyd's negligence claim for failure to exhaust "would be improper." (Def.'s Mem. Summ. J. 11.) Instead, Officer Watkins requests that pursuant to 28 U.S.C.A. § 1367(c)(3), this Court decline to exercise supplemental jurisdiction over Floyd's negligence claim and dismiss the claim without prejudice, and with leave to file a complaint in state court.

A district court may decline to exercise supplemental jurisdiction over state-law claims if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In addition, when a district court dismisses all federal-law claims before trial, "the balance of the

---

[2] The time to exhaust Floyd's administrative remedies has long passed and, accordingly, his federal claim should be dismissed with prejudice. *Mitchell v. Diazon*, No. C10-2075-RAJ-BAT, 2011 WL 6370160, at *6 (W.D. Wash. Oct. 31, 2011), *report and recommendation adopted by*, 2011 WL 6370080 (W.D. Wash. Dec. 20, 2011); *accord Loos v. ODOC*, No. 3:11-cv-00208-BR, 2012 WL 383385, at *4-5 (D. Or. Feb. 6, 2012).

Page 11 - FINDINGS AND RECOMMENDATION

factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *accord Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc); *see also Crane v. Allen*, No. 3:09-cv-1303-HZ, 2012 WL 602432, at *10 (D. Or. Feb. 22, 2012) ("Having resolved all claims over which it had original jurisdiction, this court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.").

The Court finds that the factors of judicial economy, convenience, fairness, and comity weigh in favor of this Court declining to exercise supplemental jurisdiction. Neither the Court nor the parties have invested significant time and resources in federal court sufficient to justify retaining jurisdiction. The Court closely examined the sole federal law claim and resolved it in favor of Officer Watkins. State court is a convenient forum for the parties, and declining to exercise supplemental jurisdiction respects the values of federalism and comity. For all of these reasons, the Court declines to exercise supplemental jurisdiction over Floyd's remaining state law claim and, accordingly, the district judge should dismiss Floyd's state law claim, without prejudice, and with leave to refile that claim in state court.

## IV. CONCLUSION

For the reasons set forth above, the district judge should GRANT Officer Watkins' Motion for Summary Judgment (ECF No. 24), and DISMISS Floyd's Complaint (ECF No. 4).

## V. SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are

filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 16th day of July 2015.

STACIE F. BECKERMAN
United States Magistrate Judge